## United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

CONTINENTAL REAL ESTATE

      Appellant

Appealed from
SBA PPP Loan Number
5457717009

Issued: March 21, 2023

Decision No. PPP-5457717009

APPEARANCES

Katherine Dodson, Esq., Attorney for Borrower

Samina Nabijee, Esq., Office of General Counsel, SBA

DECISION

### I. Introduction and Jurisdiction

On December 10, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final Paycheck Protection Program (PPP) loan review decision finding CONTINENTAL REAL ESTATE (Appellant) is ineligible for the PPP loan received. On January 6, 2023, Appellant filed the instant appeal from that final SBA loan review decision.

Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that OHA reverse it, and find Appellant is eligible for PPP loan forgiveness.

For the reasons discussed infra, I DENY the Appeal and AFFIRM the final SBA loan review decision.

OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 Subpart L.

### II. Background

On April 17, 2020, Appellant applied for a PPP loan of $2,922,700.00 with The Huntington National Bank ("Lender") Administrative Record "AR" at 2995-3001. On April 23, 2020, Lender approved the loan in full and disbursed the funds. AR at 3002. On September 16, 2021, Appellant applied for PPP loan forgiveness in the amount of $2,872,765.70. Supplemental of Administrative Record "SAR" at Exhibit A, Page 1.

On November 1, 2021, SBA notified Appellant through its lender that it was conducting a review of the loan. AR at 2976-2977. On January 21, 2022, SBA notified Appellant through its lender that it was potentially recommending a full denial based on affiliation rules. AR at 2978-2982. A follow-up request for additional information was sent on February 22, 2022. AR at 2983-2987. Another follow-up request was sent April 4, 2022. AR at 2988-2994.

Docket No. PPP-5457717009

Documentation was provided to SBA by Appellant, but was deemed insufficient to overcome the affiliation rules it determined applied to the loan. So, on September 12, 2022, SBA issued a Final Loan Review Decision ("FLRD") denying PPP loan eligibility based on affiliation. However, SBA withdrew the FLRD on November 5, 2022, and filed a Motion on November 15, 2022, to dismiss the appeal. I issued an Order of Dismissal on November 15, 2022, based on lack of jurisdiction.

A petition for reconsideration (PFR) of that dismissal was filed by Appellant on November 22, 2022, alleging that it was not given an opportunity to respond to the motion to dismiss, and further questioned SBA's authority to withdraw the FLRD. I dismissed the PFR on December 12, 2022, as the withdrawal of the FLRD removed jurisdiction from OHA.

After withdrawal of the FLRD, SBA issued a new FLRD on December 10, 2022, which is the subject of the instant appeal. Dkt. No. 2[1], AR at 27-28. The AR at 20 reflects that affiliation was no longer considered by SBA as a basis for its determination that Appellant is ineligible for a PPP loan and forgiveness thereof.

On January 6, 2023, Appellant timely filed the instant appeal. Dkt No. 1. On January 25, 2023, I issued a Notice and Order requiring SBA to produce the AR by February 14, 2023. Dkt. No. 10. The AR, as well as the SAR, were timely filed on February 14, 2023. Dkt. No. 11 and 12. Appellant was permitted to object to the AR until February 24, 2023. No response was filed. SBA could, but was not required, to respond to the appeal until March 13, 2023. SBA timely filed its response on March 13, 2023. Dkt. No. 13. The record was closed on March 13, 2023.

### A. Final SBA Loan Review Decision

On December 10, 2022, SBA issued the current final loan review decision, finding that Appellant was ineligible for the PPP loan received.

The reason(s) for SBA's decision is as follows:

After review of the documentation provided, the SBA concludes that Borrower is organized as an ineligible Passive Entity.

Open-source searches confirm CONTINENTAL REAL ESTATE is a developer, "We are a multidisciplinary, nationwide developer and builder of commercial real estate projects" and further states, "$3 billion+ developed, 30 million sq.ft. developed".

A review of the 2019 financial statements provided report development fees, professional fees and Gain from sale of affiliated interests.

Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired

---

[1] Docket No. refers to the order in which documents were uploaded to the OHA Case Portal ("the Portal").

or improved with the loan proceeds (except as Eligible Passive Companies under 13 CFR § 120.111) are not eligible.

### B. <u>Appeal</u>

On January 6, 2023, Appellant filed the instant appeal, arguing as follows, in pertinent part, that the final SBA loan review decision is clearly erroneous:

> The SBA, on April 2, 2020, issued emergency regulations for the Paycheck Protection Program (PPP), and made the provisions of 13 CFR §120.110 applicable to determine eligibility for the first round PPP loans. See 85 Fed. Reg. 20811-01. The applicable regulation provides that "Businesses that are not eligible for PPP loans are identified in 13 CFR §120.110 and described further in SBA's Standard Operating Procedure (SOP_ 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible).

> The SBA's Standard Operating Procedure (SOP 50 10 6) provides further clarification on the businesses ineligible for SBA business loans. As is relevant to this appeal, the SOP 50 10 6 defines a passive business as follows:

> a. Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds are not eligible, except Eligible Passive Companies under 13 CFR § 120.111. (See Ch. 2, Para. A., Eligible Passive Companies, of this Section for more information.)

> b. Businesses primarily engaged in subdividing real property into lots and developing it for resale on its own account are not eligible.

> c. Businesses that are primarily engaged in owning or purchasing real estate and leasing it for any purpose are not eligible. For example, shopping centers, salon suites, and similar business models that generate income by renting space to accommodate independent businesses that provide services directly to the public are not eligible.

> d. Businesses that lease land for the installation of a cell phone tower, solar panels, billboards, or wind turbines also are not eligible. However, the business operating the cell phone tower, solar panel, billboard, or wind turbine is eligible.

> e. Businesses that have entered into a management

agreement with a third party that gives the management company sole discretion to manage the operations of the business, including control over the employees, the finances and the bank accounts of the business, with no involvement by the owner(s) of the Applicant, are not eligible. (See Chapter 1, Para. D.5, Affiliation Based on Management in this Section for additional guidance on management agreements.)

f. Apartment buildings and mobile home parks are not eligible.

g. Residential facilities that are not licensed as nursing homes or assisted living facilities and do not provide healthcare and/or medical services are not eligible.

h. The limited circumstances under which certain businesses engaged in renting or leasing may be eligible are as follows:

i. Hotels, motels, recreational vehicle parks, marinas, campgrounds, or similar types of businesses are eligible if more than 50% of the business's revenue for the prior year is derived from transients who stay for 30 days or less at a time and the business complies with all zoning and other legal requirements. If the Applicant is a Start-Up Business, the Applicant's projections must show that more than 50% of the business's revenue will be derived from transients who stay for 30 days or less at a time.

ii. Businesses that are licensed as nursing homes or assisted living facilities and provide healthcare and/or medical services are eligible. Healthcare and/or medical services include but are not limited to services such as wellness checks, monitoring and/or helping take medications, monitoring blood sugar levels, having medical staff onsite (even on a part-time basis). The SBA Lender must consider the terms of the license under which the business operates or will operate when determining eligibility.

iii. Businesses that are engaged in leasing equipment, household goods or other items are eligible. (See subparagraph A.2. above regarding the eligibility of businesses engaged in lending.)

iv. Businesses such as barber shops, hair salons, nail salons, and similar types of personal services businesses are eligible, regardless of whether they have employees or contract with individuals to provide the services that the business is

Docket No. PPP-5457717009

> providing directly to the public. (See subparagraphs a) and c) above regarding ineligibility of developers and landlords.)

> i. An ineligible passive business cannot obtain an SBA Loan for any purpose, including the purchase or construction of a building for its own use.

SBA SOP 50 10 6, Part 2, Section A, Chapter 3

Continental Real Estate Companies is organized and operates within the State of Ohio. The State of Ohio is within the Federal 6th Circuit. Any appeals related to this SBA Final Loan Review Determination would be appealed to the 6th Circuit Court of Appeals.

The case law precedent in the 6th Circuit is very clear. The limitations and exclusions set forth in 13 CFR §120.110 are NOT applicable or valid for purposes of the first round PPP loan program. Specifically, the 6th Circuit held, in DV Diamond Club of Flint, LLC v. SBA, 960 F.3d 743, 746 (2020), that Congressional intent in the CARES Act was clear that the first round PPP loans were available for "any business concern" that meets the size criteria. The 6th Circuit further held that Congress's enactment of the CARES Act "made clear that the SBA's longstanding ineligibility rules are inapplicable given the current circumstances." Id. …

Although the controlling case precedent makes clear that the passive business eligibility rule cannot be applied to first round PPP loans, Continental also argues that even if such provisions were found to be applicable, it does not meet the definition of a passive business. Specifically, during the applicable covered period, Continental Real Estate Companies was not a passive investor/developer. Continental Real Estate Companies was an active business that employed many people and provided professional services to its clientele.

There is no reported case law (other than the Eastern District of Michigan case that rejected the use of the passive business eligibility rule for PPP loans) that interprets the provisions of 13 CFR §120.110(c). Accordingly, what the SBA defines as a passive business must be found in review of administrative agency materials like the SOP 50 10 6 and the general usage and definitions of "passive."

The Merriam-Webster's Dictionary defines "passive" in relation to a business activity to be a business in which the investor does not actively participate in the generation of income. Webster's further defines passive to mean "not active or operating" and "lacking energy or will."

Continental's primary source of income came from fees for services it rendered to customer/ clients. As you will notice from the 2019 tax return, the gross receipts reported are from active business operations including receipts for professional management, legal, accounting services, asset management and other management and development services. As noted in Section III, Subsection B above, the majority of the revenues earned by Continental in 2019 came directly from the day-to-day services rendered by Continental's employees.

Continental was not a primary owner of real estate. The core business functions of Continental were not investments or real estate. Rather, the core business revenues were earned through active, day-to-day work and provision of professional services.

Docket No. PPP-5457717009

As set forth in Section IV above, the SBA's Standard Operating Procedure (SOP 50 10 6) provides further clarification on what constitutes a "passive business." Specifically, SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3) provides a listing of seven business types that are considered "passive businesses." Continental does not meet any of the seven business types identified in this section. This is more fully identified below:

1. **Continental Is Not A Developer or Landlord:** Continental did not own any real estate. Continental did not develop any land for itself. Continental was not a landlord. It did not receive rents or royalties. Rather, the majority of the income earned by Continental came from active business operations. The PPP loan proceeds received by Continental were used to pay payroll and other eligible expenses for Continental's active business operations. Accordingly, Continental does not meet the definition of a passive business set forth in SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3)(a).

2. **Continental Does Not Subdivide Real Property Into Lots & Develop for Resale on Its Own Account:** As noted above, Continental did not own any real estate. Continental did not subdivide real property into lots and develop for its own account. Accordingly, Continental does not meet the definition of passive business set forth in SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3) (b)..

3. **Continental Does Not Purchase Real Estate or Lease Real Estate:** As noted many times above, Continental did not own real estate. Continental did not lease real estate. Accordingly, Continental does not meet the definition of passive business set forth in SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3)(c)..

4. **Continental Does Not Lease Land for Installation of Cell Phone Towers, Solar Panels, Billboards, or Wind Turbines:** Continental did not own any real estate. Continental did not lease land for installation of anything including cell phones, solar panels, billboards or wind turbines. Accordingly, Continental does not meet the definition of passive business set forth in SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3)(d)..

5. **Continental Did Not Enter into Management Agreements with Third Parties to Run Its Operations:** Continental did not enter into any management agreements with Third Parties to run its operations. Rather, all of Continental's business services were performed, managed, organized, and controlled by Continental's employees. Accordingly, Continental does not meet the definition of passive business set forth in SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3)(e)..

6. **Continental Does Not Own Apartment Buildings or Mobile Home Parks:** Continental did not own any real estate, including apartment buildings or mobile home parks. Accordingly, Continental does not meet the definition of passive business set forth in SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3)(f).

7. **Continental Does Not Own or Operate Residential Facilities:** Continental did not own any real estate, including residential facilities during the covered period. Accordingly, Continental does not meet the definition of passive business set forth in SOP 50 10 6, Part 2, Section A, Chapter 3(A)(3)(g)..

Continental does not meet any of the definitional provisions identified by the SBA in SOP 50 10 6 to define a passive business. Continental's revenues were earned through day-to-day work of its employees. These are highly paid, highly skilled

professionals who provided meaningful, hard, and thorough work to Continental's customers. There is nothing "passive" about Continental's core business services.

## C.    SBA's Response to the Appeal

On March 13, 2023, SBA filed its response to the Appeal, arguing as follows, in pertinent part:

### A. Under the CARES Act, PPP Loans Were Subject To The SBA 7(a) Loan Program Requirement in 13 C.F.R. § 120.110(c) Which Specifically Defines And Identifies Borrowers Excluded From Eligibility

Congress has given SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," id. § 633(d). That background authority naturally extends to the PPP lending program. *See Camelot Banquet Rooms, Inc., et al. v. SBA*, No. 21-2589, 2022 WL 221616 (7th Cir. 2022) (noting that first round PPP legislation "gave the SBA considerable discretion to decide eligibility for the Program.") In addition, the CARES Act expressly provides that the PPP is a part of SBA's 7(a) Loan Program and subject to the policies and regulations applicable to the 7(a) Loan Program. Congress made the decision not to enact the PPP as a freestanding program, but rather to utilize the pre-existing infrastructure of SBA's Section 7(a) lending program. See 85 Fed. Reg. at 20811 (recognizing the CARES Act "temporarily adds a new product, titled the 'Paycheck Protection Program,' to [SBA's] 7(a) Loan Program"). The CARES Act expressly modified some of Section 7(a)'s requirements for purposes of PPP loans. *See, e.g.,* 15 U.S.C. 636(a)(36)(I), (R) (exempting PPP from Section 7(a) requirements regarding an applicant's ability to obtain credit elsewhere and prepayment penalties). However, Congress specified that "[e]xcept as otherwise provided", the Administrator may guarantee PPP loans "under the same terms, conditions, and processes" as a loan made under Section 7(a). CARES Act § 1102, 134 Stat. at 287 (codified 15 U.S.C. § 636(a)(36)(B)).

One Section 7(a) loan program regulation (and therefore, a term and condition of that program) is 13 C.F.R. § 120.110(c), which provides that businesses ineligible to receive 7(a) loans include "(c) Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds []." This rule was already in effect at the time the PPP was promulgated and made a part of the PPP by virtue of the PPP being an arm of the 7(a) Loan Program. Neither Congress nor SBA made an exception to this rule for lenders seeking PPP loans.

Pursuant to the CARES Act, SBA promulgated several regulations concerning PPP eligibility, including the First Interim Final Rule of the PPP ("First IFR"). *See* Paycheck

Protection Program, 85 Fed. Reg. at 20811 (posted on the SBA and Treasury websites on April 2, 2020 and effective April 15, 2020); CARES Act § 1102, 134 Stat. at 287 (codified 15 U.S.C. § 636(a)(36)(B)). The First IFR, which was effective when Appellant applied for and received its PPP Loan, advised all PPP lenders and applicants of the basic PPP eligibility criteria, including the incorporation of 13 C.F.R. § 120.110. In that regard, the First IFR informed PPP lenders and applicants, "Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10 Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible." 85 Fed. Reg. at 20812. [Footnote omitted] In turn, SOP 50 10 5(K), Subpart B, Chapter 2, Section 3(A)(3)(a), cites 13 C.F.R. § 120.110(c) for the proposition that loans to passive entities are prohibited.

Three Circuit Courts, the 2nd, 11th, and D.C. Circuit courts, have issued opinions validating SBA's application of 120.110 or bankruptcy eligibility to PPP. *See Pharaohs GC, Inc. v. United States Small Business Administration,* No. 20-2170, 990 F.3d 217 (2nd Cir. March 4, 2021) (upholding the application of 13 C.F.R. §120.110 to prevent adult entertainment establishments from obtaining a PPP loan); *USF Fed. Credit Union v. Gateway Radiology Consultants, P.A.,* 983 F.3d 1239 (11th Cir. 2020) (holding that PPP is a part of the existing Section 7(a) Loan Program and thus subject to the existing conditions and regulations pertaining to that program); *American Association of Political Consultants v. U.S. SBA,* No. 20-cv-970 (ECF 21) (D.D.C. April 21, 2020), affirmed by *Am. Ass'n of Political Consultants & Ridder/Braden v. United States SBA,* 810 Fed. Appx. 8, 2020 U.S. App. LEXIS 16697 (D.C. Cir., May 26, 2020) (affirming SBA could apply the provisions of 13 CFR 120.110(r) to prevent a non-profit association primarily engaged in political or lobbying activities from obtaining a PPP loan).

In *Gateway Radiology Consultants,* the 11th Circuit upheld SBA's exclusion of bankrupt borrowers from PPP eligibility. *Id.* at 1264. The Court found that 1) SBA did not exceed its authority in adopting its bankruptcy exclusion rule for PPP eligibility; 2) the rule was not contrary to the CARES Act and was based on a reasonable interpretation of the Act, and 3) SBA did not act arbitrarily and capriciously in adopting the bankruptcy exclusion rule. *Id.* at 1264.

In reaching this conclusion, the Court conducted a 2-part *Chevron* analysis [footnote omitted] and determined that SBA did not exceed its statutory authority. Addressing *Chevron* part 1, the Court determined that Congress had not directly spoken on the issue of bankrupt debtors' eligibility for the PPP and that Congress' silence on the issue indicated its delegation of authority to SBA. The Court rejected the argument that SBA could only consider the eligibility factors expressly listed in the CARES Act:

First, as we have noted, the CARES Act relaxes and simplifies the usual § 7(a) size requirements, which are regulated in detail by the SBA. See 15 U.S.C. § 636(a)(36)(D)(i); 13 C.F.R. § 121.201. And in doing so the Act provides that "any business concern . . . shall be eligible" for a PPP loan if it "employs not more than the greater of . . . 500 employees; or . . . if applicable, the size standard in number of employees established by" the SBA for that business concern's industry. 15 U.S.C. § 636(a)(36)(D)(i)(I)-(II). Of course, "any" typically has an expansive meaning, *see Jones v. Waffle House, Inc.,* 866 F.3d 1257, 1267 (11th Cir. 2017), and "shall" is an imperative, *see Kingdomware,* 136 S. Ct. at 1977.

But it would be illogical to conclude that this subsection of the CARES Act sets size as the one and only requirement for PPP eligibility. It would be illogical because other sections of the CARES Act waive or relax for PPP loans other § 7(a) eligibility requirements. See 15 U.S.C. § 636(a)(36)(I) (waiving the requirement that the applicant be unable to obtain credit elsewhere). If the sole eligibility requirement were size, then those other provisions would be pointless. We try hard not to interpret statutory provisions in a way that will result in them having no purpose or effect. *Corley v. United States,* 556 U.S. 303, 314, 129 S. Ct. 1558, 173 L. Ed. 2d 443 (2009). And there is a more reasonable and obvious reading of the revision of § 7(a) size requirements for PPP loan purposes. That revision simplifies the detailed and cumbersome size requirements set forth in 13 C.F.R. § 121.201 by focusing only on the number of employees, and it relaxes the size requirement for businesses in many industries. It does not prohibit the SBA from establishing other, non-size related eligibility criteria.

Second, *Gateway* relies on a subsection of the CARES Act that delegates authority to lenders to make PPP loans and requires them to take into account two "considerations" when "evaluating the eligibility of a borrower." See 15 U.S.C. § 636(a)(36)(F)(ii)(II). One is whether the borrower "was in operation on February 15, 2020," and the other is whether it "had employees for whom the borrower paid salaries and payroll taxes" or "paid independent contractors, as reported on a Form 1099-MISC." *Id.* But that provision does not say those two considerations are the only ones. And for reasons we've discussed, it would make little sense if they were the only considerations or criteria for determining eligibility. The Act establishes some eligibility requirements, the size requirement, for example. See id. § 636(a)(36)(D)(i). And it waives some generally

applicable § 7(a) requirements, such as the inability to obtain credit elsewhere. *See id*. § 636(a)(36)(I). It would render parts of the Act inoperative and superfluous if the two "considerations" were interpreted as the only ones. *See Corley*, 556 U.S. at 314. . . .

The takeaway is: None of the individual statutory provisions that *Gateway* relies on provides an unambiguous answer to the question of whether bankruptcy debtors are eligible for PPP loans. Nor does the sum of those provisions. *Cf. Friends of the Everglades,* 570 F.3d at 1225 ("The broader context of the statute as a whole does not resolve the ambiguity.") (quotation marks omitted). Instead, the text of the CARES Act shows Congress placing the PPP within § 7(a), leaving intact the sound value requirement, and delegating rulemaking authority to the SBA. That is all the more important because in the Act Congress expressly made some changes to § 7(a)'s requirements, showing it knew how to alter them for PPP loans and how to delegate to the SBA the question about whether to alter others.

*Id.* at 1258-59 and 1261.

The Court then turned to *Chevron* part 2 and determined that SBA's bankruptcy exclusion rule was reasonable and therefore entitled to deference. *Id*. at 1261. When determining reasonableness, the Court is not permitted to substitute its own judgment for SBA's and must only consider "whether the SBA's interpretation is rational." *Id*. at 1261-62.

Congress gave the SBA only 15 days to issue rules, which is practically warp speed for regulatory action, a command that undoubtedly sprang from the felt need for quick action in light of the burgeoning economic crisis stemming from the pandemic. Even though the purpose of the PPP was to quickly help small businesses in distress or before they became distressed, as we have stressed and stressed again, Congress did put the program in § 7(a), which has a sound value requirement that applies to "all" § 7(a) loans. See 15 U.S.C. § 636(a)(6). In that way, it identified "manifestly competing interests" that it "intended to accommodate." *Chevron*, 467 U.S. at 865. But it did not accommodate them with specificity when it came to whether bankruptcy debtors are eligible for PPP loans. It left that to the SBA.

The SBA's interpretation of the CARES Act and § 7(a) was a reasonable accommodation of those interests.

Lastly, the Court found that SBA did not act arbitrarily or capriciously in adopting its bankruptcy exclusion rule.

*DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743 (6th Cir. 2020), is not dispositive. The *DV Diamond Club* case involved an appeal by SBA from a district court's grant of a preliminary injunction in favor of a sexually oriented business that was seeking a PPP loan. Id. at 745. On appeal, the 6th Circuit merely determined that the sexually oriented business was likely to succeed on the merits of its case (i.e., was likely to succeed in proving PPP eligibility) taking into consideration irreparable harm and public interest, but did not decide the case on its merits. To date, no appellate court has held SBA's 13 C.F.R. § 120.110 regulation or interpretation of the regulation as it applies to passive businesses under the CARES Act invalid.

Appellant relies heavily on *National Ass'n of Home Builders v. SBA*, 2021 U.S. Dist. LEXIS 186548 (E.D. Mich. Sept. 28, 2021), which found that the long-standing 7(a) loan program guidelines regarding eligibility for SBA loans could not be applied to PPP loans. However, *Home Builders* is a district court case with no precedential value. *See Midlock v. Apple Vacations West,* 406 F.3d 453, 457-58 (7th Cir. 2005). An OHA decision invalidating SBA's regulations based on district court decisions would have an inconsistent and unpredictable effect on SBA's implementation of PPP loan forgiveness across the United States as applied by OHA. *See id.* (noting that if district court opinions had precedential value it would create an unmanageable legal system); *see also Colby v. J.C. Penny, Co.,* 811 F.2d 1119, 1124 (7th Cir. 1987) (it is a bedrock principle that "the responsibility for maintaining the law's uniformity is a responsibility of appellate rather than trial judges." "Federal district judges in Detroit do not make law that is binding on federal district judges in Chicago.").

SBA appealed to the 6th Circuit following the district court's decision in *Home Builders*, but ultimately moved to dismiss its appeal after granting forgiveness to plaintiffs. Appellant posits that SBA forgave plaintiffs' loans "despite [plaintiffs'] being passive business entities." (Appeal at 8) But the basis for forgiveness is not apparent from the joint motion to dismiss. (Exhibit F – SBA Joint Motion to Dismiss) There is no indication, as Appellant contends, that SBA forgave plaintiffs' loans because it recognized or accepted the district court's conclusion that SBA could not use existing 7(a) program rules and regulations when determining eligibility for PPP loans, itself a subset of the 7(a) program.

Finally, to the extent Appellant argues that SBA's

Docket No. PPP-5457717009

forgiveness for the plaintiffs in *Home Builders* entitles Appellant to forgiveness, this is an argument for estoppel. Estoppel bars a party from doing something different from what has been done before or what has been legally established as true. See Definition of Estoppel at https://www.law.cornell.edut/wex/estoppel. The Supreme Court has determined that as a general rule, the federal government may not be estopped from enforcing public laws, even though private parties may suffer hardship as a result in a particular case. *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990); *see also* Department of Justice Manual at https://www.justice.gov/jm/civil-resource-manual-209-estoppel). In other words, in enforcing the applicable PPP law(s), SBA cannot be prevented (*i.e.,* estopped) from making a different decision on Appellant's loan forgiveness application than it may have made on another party's application. The applicable laws, regulations, and policy make clear that each PPP loan forgiveness application must be individually reviewed by SBA and a separate, independent decision made on the application to determine if it supports loan forgiveness and complies with the applicable laws, regulations, and policy. *See* 15 U.S.C. § 636(a0(36); 15 U.S.C. § 636m; First IFR.

Based on the above, OHA should uphold SBA's decision to apply the 7(a) loan program passive entity ineligibility policy to the PPP. SBA's decision denying Appellant's forgiveness request is consistent with Congressional intent, the plain language of the CARES Act and the regulations and rules promulgated thereunder. Appellant is ineligible for PPP loan forgiveness and OHA should affirm SBA's decision.

### B. SBA Was Correct in Its Determination That Appellant, As a Passive Business, Was Ineligible For A PPP Loan.

A passive entity is owned by a developer or landlord that does not "actively use or occupy the assets acquired or improved with the loan proceeds." SOP 50 10 5(K), Subpart B, Chapter 2, Section 3(A)(3)(a); 13 C.F.R. 120.110(c). On the front page of its own website, Appellant brands itself as a "full service [] developer." https://www.continental-realestate.com/. Under its "Office Development Portfolio" page, Appellant states "Continental's history and affiliation with office furniture made a natural lead-in to a development focus on office parks [] and mid-rise buildings []. *** While remaining diverse with our office development activities; Continental has also purchased, renovated, re-tenanted and sold high-rise office space after stabilizing the performance of the assets." https://www.continentalrealestate.com/projects/office/.

Appellant's Chief Financial Officer, in direct

correspondence to SBA, admitted that Appellant "is a real estate developer with 65 employees at the time of it's [sic] PPP loan application." (AR [at] 576) The CFO went on to say "as is typical in real estate – independent 3rd party management companies are engaged to oversee the day to day operations of each facility." (*Id*.) Finally, the 2019 profit and loss statement reveals that Appellant received over $5 million in development and professional fees. (AR 3003)

Now, on appeal, Appellant contradicts its own website, its CFO, and its profit and loss statement, and states "[Appellant] Is Not A Developer" (Appeal, at 10) because it does not own real estate. But a passive entity need not own real estate. Appellant develops land for the benefit of third parties, which means that it does not "actively use or occupy the assets acquired." It earns revenue from the development of real estate, making it a developer. Therefore, it is irrelevant that Appellant does not fit into the other examples of passive businesses, such as those that subdivide real estate or lease property. By its own admission, Appellant is a developer, which is a passive entity under the regulations, and ineligible for a PPP loan.

## C. Appellant Is Ineligible For PPP Loan Forgiveness Because It Is Ineligible Under the PPP

Applying SBA's interpretation of the CARES Act and the First IFR, Appellant is ineligible for PPP loan forgiveness. As stated above, SBA concluded that Appellant was a passive entity. (AR 27-28) As such, it was an ineligible borrower under the PPP.

SBA regulations make clear that ineligible borrowers would not receive loan forgiveness under the CARES Act. See, e.g., CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b)) ("An eligible recipient shall be eligible for forgiveness..."); Paycheck Protection Program – Requirements – Loan Forgiveness, 85 Fed. Reg. 33004-05 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the PPP loan ... the loan will not be eligible for forgiveness."); Paycheck Protection Program – Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (Feb. 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness). Thus, Appellant is, and has been, ineligible for PPP loan forgiveness and its Appeal seeking to overturn SBA's full denial of its PPP loan forgiveness request should be denied.

III.  Discussion

Docket No. PPP-5457717009

### A. Standard of Review

Appellant has the burden of proving all elements of the appeal. Specifically, Appellant must prove that the final SBA loan review decision is based upon a clear error of fact or law. 13 C.F.R. § 134.1210.

An Administrative Judge or Administrative Law Judge has no constitutionally based judicial power, see Ramspecky. Federal Trial Examiners Conference, 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. See e.g., 20 U.S.C. §1234(c) (statute establishing the Office of Administrative Law Judges within the Department of Education provides that ALJs "shall be officers or employees of the Department"). As such ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. See Nash v. Bowen, 869 F.2d 675, 680(2d Cir.), cert, denied, 493 U.S. 813 (1989); Mullen v. Bowen, 800 F.2d 535, 540-41 n.5 (6th Cir.1986); Brennan v. Department of Health and Human Services, 787 F.2d 1559 (Fed. Cir.), cert. denied, 479 U.S. 985 (1986); Goodman v. Svahn, 614 F. Supp. 726, 728 (D.D.C. 1985);Association of Administrative Law Judges, Inc. v. Heckler, 594 F. Supp. 1132, 1141 (D.D.C.1984); c f D'Amico v. Schweiker, 698 F.2d 903, 906 (7th Cir. 1983). Accord 34 CFR §81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

Thus, an Administrative Judge has no authority to decide the constitutionality of an SBA law, regulation, or policy or to interpret such contrary to SBA's established regulation or policy [emphasis added]. The task at hand is to determine whether the adopted regulations and policies have been appropriately applied to the facts of the case. Neither initial nor final decisions rendered by the SBA's Office of Hearings and Appeals (OHA) under this subpart are precedential, and thus decisions in other PPP cases are not persuasive in this matter. 13 CFR §134.1212.

### B. Analysis

In March 2020, in response to the COVID-19 pandemic and the resulting economic upheaval, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281 (2020). Section 1102 of this Act amends 15 U.S.C. § 636(a) to add another special Section 7(a) loan to the SBA's Section 7(a) loan portfolio, the Paycheck Protection Program (PPP) [emphasis added]. CARES Act, Pub. L. No. 116-136, §1102, 134 Stat. 281, 286 (2020) (codified in 15 U.S.C. §636(a)(36)) [emphasis added]. Congress expressly provided that "[e]xcept as otherwise provided in [15U.S.C. §636(a)(36)], the [SBA] Administrator may guarantee [PPP] loans under the same terms, conditions, and processes as a loan made under [15 U.S.C. § 636(a)]." Id. at 287 (codified as 15 U.S.C. 636(a)(36)(B)). The Paycheck Protection Program was aimed at helping businesses meet payroll costs and pay operating expenses to keep people employed through the economic downturn. Congress first authorized $349 billion in loans. CARES Act § 1102(b)(1). One month later, Congress increased this figure to more than $600 billion. Paycheck Protection and Health Care Enhancement Act, Pub.L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020).

Congress gave the SBA rulemaking power directly related to the PPP,

14

specifying that SBA, not later than 15 days after the passage of the Cares Act "shall issue regulations to carry out this title," and SBA implemented and issued several interim final rules (IFRs) under the Program. CARES Act,§ 1114, 134 Stat. at 312 (codified at 15 U.S.C. § 9012).

The PPP is directed at small businesses and its principal function is to provide potentially forgivable loans to them. See 15 USC § 636(a)(36)(D)(I). The PPP loans are made under the same terms, conditions, and processes as other SBA loans, although the scope of allowable borrowers was expanded for PPP loans to generally include sole proprietorships, independent contractors, non-profit organizations, and other specified businesses, if they were operating "small" business of not more than 500 employees. 15 USC § 636(a)(36)(B) and 15 USC § 636(a) (36)(D).

An Interim Final Rule lays out how one calculates the amount which can be borrowed. As noted above, the Cares Act did not spell out loan restrictions but left it to the SBA to implement rules which would carry out Congressional intent. The First Interim Rule modifies several general Section 7(a) loan eligibility criteria as to PPP loans. This means that Section 1114 of the CARES Act waived the requirement for the First IFR to be published in the Federal Register.

Thus, the First IFR was effective without publication in the Federal Register and was issued for the immediate implementation of the PPP through publication on SBA's and Treasury's websites on April 2, 2020. Consequently, publication of the rule in the Federal Register was not required, but SBA did so in furtherance of the intent of the requirement that it issue regulations to carry out the PPP.

The IFR had both an effective date and an applicability date. April 15, 2020 is the date the IFR was published in the Federal Register, and the applicability date indicates that the IFR applies to applications submitted under the PPP through June 30, 2020, or until funds are exhausted. 85 Fed. Reg, Page 20812. The IFR went through several revisions, most notably to account for the creation of the second draw PPP loans.

13 C.F.R. § 120.111 sets out a list of conditions that a passive business must meet in order to be considered an Eligible Passive Company. The Appellant asserts that it is not a passive business at all, citing payroll documentation and its tax returns. However, an SBA Standard Operating Procedure (SOP) makes clear that the Appellant is ineligible for a PPP loan:

> III. Ineligible Types of Businesses
> A. The Lender must determine whether the Applicant is one of the types of businesses listed as ineligible in SBA regulations. Certain business types appearing on this list may be eligible under limited circumstances, as discussed below . . .
> 3. Passive Businesses (13 CFR § 120.110(c)):
> a. Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds

Docket No. PPP-5457717009

(Except Eligible Passive Companies under 13 CFR § 120.111[2]).

. . .

In its appeal, Appellant describes its business operations as follows:

> Continental's revenues were generated from the provision of services related to identifying, securing, helping with finance, bookkeeping and tax preparation, and general administration of real estate development projects in three primary focus areas: (1)hospitality, (2) assisted living facilities, and (3) multi-family apartment complexes (including student housing).

This code section does not require that the developer own the real estate developed, as alleged by Appellant's counsel. Nor does 13 CFR §120.111 apply, and it is not otherwise contended by Appellant.

Furthermore, Appellant's arguments concerning the issuance of the district court case opinion in N.A. Home Builders v. US Small Business Administration, 2021 U.S. Dist. LEXIS 186548, purportedly favorable to Appellant's position, also fail. SBA filed an appeal of that opinion to the 6th Circuit Court of Appeals. A joint motion by Home Builders and SBA "to dismiss for lack of jurisdiction and to vacate the District Court's Opinion and Order" was then filed by the parties. The 6th Circuit granted the motion, 2023 U.S. App. LEXIS 908, the parties to the appeal having agreed that the appeal and the underlying case are now moot because all of the Plaintiff's members who received loans under the program have obtained loan forgiveness. The Joint Motion granted by the 6th Circuit included the language "loan forgiveness to which federal law entitled them." Dkt. No. 9 at 4.

Appellant infers from the dismissal that the appeal was dismissed despite the Appellant's being passive entities, but there is no indication or verification of that position in the record. Dkt. No. 1.

Further, *Home Builders* is a district court case with no precedential value. *See Midlock v. Apple Vacations West*, 406 F.3d 453, 457-58 (7th Cir. 2005). An OHA decision based on district court decisions or interpretations of SBA regulations would have an unpredictable effect on SBA's PPP loan forgiveness process. See *Id*. (noting that if district court opinions had precedential value it would create an unmanageable legal system); *see also Colby v. J.C. Penny, Co*., 811 F.2d 1119, 1124 (7th Cir. 1987) ( "the responsibility for maintaining …. uniformity is a responsibility of appellate rather than trial judges).

The applicable laws, regulations, and policy provide that every PPP loan forgiveness application must be individually reviewed by SBA and a separate, independent decision made on the application to determine if it supports loan

---

[2] SBA regulations at 13 CFR §120.111 currently provide an exception to this prohibition on providing financial assistance to passive entities if the passive entity is an Eligible Passive Company that leases real or personal property to an Operating Company for use in the Operating Company's business and complies with the conditions set forth in the regulation.

Docket No. PPP-5457717009

forgiveness and complies with the applicable laws, regulations, and policy. See 15 U.S.C. § 636(a0(36); 15 U.S.C. § 636m; First IFR. Estoppel cited by SBA in its brief (Dkt. No. 13) applies herein.

Appellant is an ineligible passive entity, and as such, is ineligible for a PPP loan, and as well for forgiveness of a PPP loan. This finding is consistent with the language cited above in the joint motion to the 6th Circuit that loan forgiveness must be based on entitlement under federal law. Such entitlement is not established by the record.

### C. Conclusion

Appellant has not established that the final SBA loan review decision is based on a clear error. I **DENY** the Appeal and **AFFIRM** the final SBA loan review decision. This is an initial agency decision.

However, unless a request for reconsideration is filed pursuant to 13 C.F.R. § 134.1211(c) on the OHA Case Portal at *https://appeals.sba.gov*, this decision shall become the final decision of SBA 30 calendar days after its service. 13 C.F.R.§ 134.1211.

A party may file a request for reconsideration within **10 calendar days** after service of an initial decision.

A request for reconsideration **must clearly show an error of fact or law** material to the initial decision. 13 C.F.R. § 134.1211(c)(1). It is the borrower's responsibility to review the rules and procedures.

*Clifford Sturek*

CLIFFORD STUREK
Administrative Judge